KENNEDY *v.* KENNEDY.

Divorce—Default—Appeal from Denial of Motion to Quash.
  Default of specially-appearing defendant in suit for divorce,
    taken over 10 months after service of process, notwithstanding
    he had not completed his ultimately unsuccessful effort to ob-
    tain leave to appeal from order denying his motion to quash
    service of process and granting defendant a right to file a
    general appearance on condition that he surrender custody of
    child, *held,* an abuse of discretion (Court Rule No 18, § 4
    [1945]).

Black, Edwards, and Voelker, JJ., dissenting.

Appeal from Oakland; Adams (Clark J.), J. Sub-
mitted June 18, 1959. (Docket No. 47, Calendar No.
47,818.) Decided January 4, 1960.

Bill by Ruth Kennedy against Charles R. Ken-
nedy, Jr., for divorce. Default of defendant entered.
Decree for plaintiff. Defendant appeals. Reversed
and remanded.

*George A. Cram,* for defendant.

Voelker, J. (*dissenting*). Plaintiff filed her bill
of complaint for divorce on June 17, 1957, and sum-
mons issued on that date. The summons appears
to have been served on defendant on June 27, 1957,
proof of service being filed on July 17, 1957. On
July 11, 1957, defendant appeared specially and

---

References for Points in Headnotes
17 Am Jur, Divorce and Separation § 469.

moved to quash service. Thereafter a remarkably sustained legal duel got under way, the notation of the calendar entries alone consuming some 6–1/2 printed pages of appellant's appendix. For our purposes it is sufficient to observe that after prolonged legal maneuvering the chancellor below ultimately denied defendant's motion to quash. This brought on more defense moves below, including a motion to rehear this denial, which was in turn denied. Defendant then sought leave to appeal to this Court from the chancellor's interlocutory order denying his motion to quash. On April 14, 1958, we denied such leave.

At this juncture it is important to note that during all this time the defendant had not yet filed any general appearance in the cause, let alone any answer. Following our noted denial of his application for leave to appeal, defendant sought reconsideration in this Court of our earlier denial. This we refused on May 8, 1958. In the meantime, on May 2, 1958, defendant's default was taken in the pending action below for failure timely to enter a general appearance.

Thereafter on May 12, 1958 (nearly a year from the time suit was commenced), defendant for the first time filed a general appearance in the divorce action, which he accompanied by a motion to set aside the default. The court on that date indicated it would grant defendant's motion on condition that he should do certain things, the court proceeding under Michigan Court Rule No 28 (1945). Among the conditions imposed by the court was that he should file a sworn answer and also, within a week, produce the child of the marriage, then still in his custody. Defendant filed an unsworn answer on May 19, 1958, and failed to produce the child. On that date, following considerable argument over the validity of the noted default, the chancellor pro-

ceeded to hear the wife's case as a default matter, granting her an absolute divorce, *pro confesso,* and signing the decree the same day. Defendant appeals here urging among other things that the decree is void because the default of May 2, 1958, on which it was based was a nullity.

The answer to this contention leads to an examination by us of several of our court rules. Court Rule No 18, § 4 (1945) provides as follows:

"Sec. 4. A defendant may, within the time for appearing, file a motion to quash the service of the process, on the ground that such service was invalid. Said motion may be supported by affidavits. Every denial of a motion to quash the service of process shall be without prejudice, whereupon the defendant shall have the right to appear generally and plead, and upon general appeal assign error on the trial court's denial of said motion."

It appears to be the principal contention of the appellant that under the foregoing court rule when the chancellor below finally denied his special motion to quash service that he, the appellant, then had a choice of courses: (1) to appear generally and plead, saving any error for a subsequent general appeal; or (2) to forthwith seek leave to appeal here from the court's interlocutory order denying his motion to quash. In this he is correct. He chose the latter course, and now urges in effect that while any phase of that attempted appeal was pending before us and undisposed this circumstance acted automatically to stay all proceedings below, and more particularly prevented the other side from taking his default for failure to appear generally.

While, as is our usual practice, we gave no reasons for our rejection of defendant's application for leave to appeal here, it seems rather manifest that we did so in order to avoid hearing this case on appeal piecemeal, since by the noted rule the defendant

could plainly have saved the error, if any, and gone ahead with his defense to the main case.

Appellant's present contention might be rather persuasive if the cited court rule were the only one which bore upon the present problem. But our court rules can rarely, if ever, safely be followed without consideration of other pertinent rules which may possibly bear upon or affect the problem. This case is no exception. It should also be noted that the quoted section of the court rule does not in terms say anything about any stay. Defendant contends that such a stay follows automatically by necessary implication. We cannot go along.

Court Rule No 62 (1945) has to do with stays of proceedings. Under section 5 thereof it appears that the trial court may grant a party litigant an order staying proceedings for such time as "may be necessary in order to make a special motion. * * * But the proceedings shall not be stayed for a longer time than to enable the party to make his motion * * * and * * * until the decision of the court thereon." The next section (section 6) of the same rule provides that "Where interlocutory orders are appealable * * * the granting of leave to appeal shall stay further proceedings while the appeal shall be pending, except as otherwise ordered by the Supreme Court."

We think these noted provisions of the last cited rule negative the contention of the defendant, and that it is quite apparent from the last section that upon attempted appeal the proceedings are stayed below only when we *grant* leave to appeal, the inference being rather unmistakable that there is no such stay while, or merely because, a litigant is still going about the business of trying to persuade us to grant him leave to appeal. We must all the more conclude this is so when we note that, under settled Michigan procedures, even an appeal as of

right from a final order does not necessarily stay all proceedings in the lower court. We also note that, even as to appeals from those final orders where leave to appeal must first be obtained, the rule (Court Rule No 62, § 2 [1945]) appears plainly to contemplate the necessity for obtaining a stay, either from the court below (limited to 20 days) or from our own Court. Defendant's principal contention is therefore without merit.

We also observe that section 8 of Court Rule No 27 (1945) provides generally that the court below may "for good cause shown * * * extend the time for putting in any pleading *or the doing of any act* which is required by the rules to be done within a limited time." (Italics added.) It does not appear that the appellant here ever sought any extension of time in which to file his general appearance, although the decision below adverse to his motion to quash occurred several months prior to our ruling on his attempt to appeal here. Thus the wonder is not so much that the plaintiff defaulted the defendant when she did, but rather why she ever waited so long to do so in the first place. In *White* v. *Sadler,* 350 Mich 511, we held that it was not necessary to apprise a delinquent defendant in advance of the intention to take his default. We find and hold that in these circumstances the default was regularly taken and that the defendant has no just cause to complain on that score.

The remaining questions we need touch upon are 3: (1) Did the trial court err in denying the defendant's motion to quash service? (2) Did it abuse its discretion in imposing the conditions it did to setting aside the noted default? (3) Was the decree warranted by the proofs? Appellant has not chosen seriously to brief or argue these points, instead choosing to confine himself largely to his contention that the default was irregular. In any event, on the

basis of the material which has been furnished us we do not find that the chancellor below abused his discretion or that he reached a wrong result. Further points sought to be raised by appellant are either without merit or become so once we have determined, as we now do, that the default taken below was regular. The decree below should be affirmed, with costs to the appellee.

BLACK and EDWARDS, JJ., concurred with VOELKER, J.

DETHMERS, C. J. I do not concur in affirmance. Defendant's default in circuit court was taken while there was pending for determination in this Court his petition for reconsideration of his application for leave to appeal from the circuit court's order denying his motion to quash service of process. He had filed a special appearance only, for purposes of making that motion. Had he filed a general appearance after denial of his motion to quash but before our determination of his petition here, he could scarcely have hoped for our favorable consideration of that interlocutory matter at that time, or at all before an appeal from final disposition of the matter below on the merits. See Michigan Court Rules, No 18, § 4 (1945). Yet, it was the failure to thus file a general appearance and to plead at that juncture, while the matter was pending here, that afforded the basis for the default. Promptly after our denial of his petition, when the matter had ceased to pend here, he entered a general appearance below and filed a motion to set aside the default. This motion was addressed to the trial court's discretion. Inasmuch as defendant's course of action in no wise represented a neglect or failure to give heed to duly served process of the court but an effort to challenge the validity of service of that

process and to preserve his right to such challenge in this Court at the earliest possible stage in the proceedings and thus to avoid the expense in time and money involved in going to trial in a matter in which he claimed the court had not acquired jurisdiction over his person, denial of his motion to set aside his default and, thus, affording him his day in court on the merits, would have amounted to an abuse of that discretion. Granting the motion, as the court here did, on the condition of surrendering custody of his child was no less so.

Accordingly, the decree should be vacated, the default set aside, and the matter remanded for further pleadings and trial. Costs to defendant.

CARR, KELLY, and KAVANAGH, JJ., concurred with DETHMERS, C. J.

EDWARDS, J. (*dissenting*). I do not find any abuse of discretion on the part of the circuit judge in this record and I concur wholly with Mr. Justice VOELKER in his analysis of the procedural problem involved and the result.

Obviously, what bothers the Chief Justice is the problem of a litigant's entitlement to a day in court prior to adjudication of rights as important as those which are involved here. I, too, feel that a circuit judge should look with favor upon motions to set aside defaults in chancery cases of this nature absent compelling reason to the contrary. In my mind, this record discloses ample reason to justify the trial judge's exercise of his discretion to the contrary.

This record discloses that there was service of process in this bill of complaint for divorce on June 27, 1957, and that at the same time there was service of an order restraining defendant from taking the minor child of the parties out of the jurisdiction of the court. Defendant did not file a general appear-

ance and make answer, and defendant did take the child of the parties to California.

On July 11, 1957, however, defendant appeared specially before the circuit judge and sought to quash the service of process. After hearing on this motion and denial thereof, defendant sought leave to appeal from the adverse decision of the circuit judge on the motion to quash process. This was denied by this Court on April 14, 1958. Although defendant had been technically in default since March 5, 1958 (15 days after circuit court denial of motion to quash service of process [See Court Rule No 27, § 3 (1945)]), no default had been taken up to this time. Subsequently, on May 1, 1958, defendant filed a motion for reconsideration before the Supreme Court on his motion for leave to appeal from the denied motion to quash process. It was while this motion was pending that plaintiff's counsel took the default.

As Mr. Justice VOELKER has amply demonstrated, our rules justified his doing so. Subsequent to our denial in this Court of the motion for reconsideration, on May 8, 1958, defendant's counsel filed a motion before the circuit judge to set aside the default and to be allowed to file a general appearance and answer. Again, there was a hearing before the circuit judge, at which the circuit judge sought compliance with the restraining order entered at the initiation of this litigation. It was only after it became obvious that there was a wilful and continuing refusal to recognize the jurisdiction of his court and to comply with its orders, that the circuit judge conditioned his setting aside the default and granting defendant the right to file a general appearance and answer upon the return of the child in accordance with the court's original order.

Court Rule No 28, § 4 (1945), places much discretion in the hands of the circuit judge in relation to setting aside of defaults:

"Any order entered under this rule may be set aside on special motion for cause shown, in the discretion of the court, on terms. In actions at law, the party desiring to have a default set aside shall, as soon as practicable after he shall know or have reason to believe that the default has been filed or entered, file and serve an affidavit of merits, and make application to the court to have the default set aside. In suits in equity, to entitle a defendant to an order setting aside his default for want of appearance or answer, he shall proffer a sworn answer showing a defense on the merits as to the whole or a part of the plaintiff's case. In all cases where personal service shall have been made upon a defendant, and proceedings taken after default on the strength thereof, his default shall not be set aside unless the application shall be made within 4 months after such default is regularly filed or entered. And in any case where personal service shall have been made upon a defendant, an order setting aside his default shall be conditioned upon his payment to the plaintiff of the taxable costs incurred in reliance on said default, *and the court may impose such other conditions as shall be deemed proper.*" (Emphasis ours.)

See, also, CL 1948, § 620.1 (Stat Ann § 27.1351).

If we recognize, as I think we do, the general desirability of maintaining the status quo during pendency of divorce proceedings, and the desirability of the circuit judge's enforcement of such interim orders as he may make pertaining to the custody of minor children of the parties, I simply do not see how we can read this record as an abuse of the circuit judge's discretion.

In accordance with the opinion of Mr. Justice VOELKER, and these views, I would affirm.

SMITH, J., did not sit.