PATZER *v.* BOWERMAN-HALIFAX FUNERAL HOME.

1. AUTOMOBILES—CONSTRUCTION OF STATUTES—ASSURED CLEAR DISTANCE AHEAD.

The statutory rule of motoring conduct that a driver must so drive as to be able to stop within the assured clear distance ahead has its antecedents in the common law, but is now a rule that must be reasonably construed (CLS 1956, § 257.627, as amended by PA 1957, No 190).

2. STATUTES—ORDINANCES—CONSTRUCTION—EMERGENCY.

Statutes and ordinances apparently expressing a universally obligatory rule of conduct may properly be construed as intended to apply only to ordinary situations and to be subject to the qualification that the conduct prohibited thereby is not wrongful if, because of an emergency or the like, the circumstances justify an apparent disobedience to the letter of the enactment.

3. AUTOMOBILES—DUE CARE—STATUTES—ASSURED CLEAR DISTANCE AHEAD.

Requisite vigilance required of a motorist on blizzard-swept highway demands that he continue on, fast enough to minimize danger of collision from the rear and slow enough to minimize the danger of collision with what may loom ahead, the variable and jury-determinable rule of due care making it impossible always to obey the letter of the statutory assured-clear-distance-ahead rule (CLS 1956, § 257.627, as amended by PA 1957, No 190).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7, 8 Am Jur 2d, Automobiles and Highway Traffic §§ 188, 720, 721.
[2] 50 Am Jur, Statutes § 217 *et seq.*
[5] 38 Am Jur, Negligence § 29.
[6] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 905, 932.
[7] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1012–1017.

4. APPEAL AND ERROR—VERDICT FOR DEFENDANT—EVIDENCE—REAR-END COLLISION.

Defendants' evidence that plaintiffs' car was stopped on the blizzard-swept highway must be accepted as true in action arising from rear-end collision by defendants' ambulance, where verdict was returned for defendants though their evidence was in conflict with plaintiffs' on that issue (CLS 1956, § 257.627, as amended by PA 1957, No 190).

5. NEGLIGENCE—ORDINARY CARE.

Ordinary care is not what one does, considered of itself and apart from all other considerations, but what he does as related to the circumstances under which he acts, and it is in consideration of these circumstances that the test is to be applied.

6. AUTOMOBILES—REAR-END COLLISION—REBUTTABLE PRESUMPTION OF NEGLIGENCE.

The driver of an overtaking car which collides with the rear end of a preceding car is presumed to be guilty of negligence but such statutory presumption is rebuttable (CLS 1956, § 257.402).

7. SAME — AMBULANCE — REAR-END COLLISION — VISIBILITY — NEGLIGENCE — QUESTION FOR JURY — INSTRUCTION — EVIDENCE.

Whether or not defendant's ambulance driver was guilty of negligence in colliding with rear end of plaintiffs' car on blizzard-swept, lakeshore highway in March *held*, properly left as a question for jury under instruction given and evidence presented showing the ambulance was being driven at speed of 20 to 25 miles an hour in response to an emergency call but with visibility ahead extremely limited (CLS 1956, § 257.402; § 257.627, as amended by PA 1957, No 190).

Appeal from Alger; Baldwin (George S.), J. Submitted April 3, 1963. (Calendar Nos. 17, 18, Docket Nos. 49,244, 49,245.) Decided June 3, 1963.

Case by Shirley Patzer against Bowerman-Halifax Funeral Home and Milton Bowerman for personal injuries sustained in rear-end collision of motor vehicles on snow-blown highway March 21, 1959. Derivative suit by Perry Patzer and General Accident Fire & Life Assurance Corporation, Ltd., a foreign corporation, for medical expense and property damage. Cases consolidated for trial and on

appeal. Verdict and judgments for defendants. Plaintiffs appeal. Affirmed.

*Albert Lopatin* and *Harry T. Ward, Jr.,* for plaintiffs.

*Arthur A. Neiman,* for defendants.

Black, J. These consolidated suits for negligence bring to consideration anew the assured-clear-distance rule of motoring conduct. The rule is a creature of statute (PA 1927, No 318, title 3, § 5; CLS 1956, § 257.627, as amended by PA 1957, No 190 [Stat Ann 1957 Cum Supp § 9.2327]). The antecedents thereof lie with the common law (see cases cited in *Lett* v. *Summerfield & Hecht,* 239 Mich 699 at 702). Its application to variant evidentiary circumstances, once visibly to the rigid,[1] has by force of inexorably developing traffic conditions been modified in recent years to one of "reasonable construction." Witness *Nass* v. *Mossner,* 363 Mich 128, and *Dismukes* v. *Michigan Express, Inc.,* 368 Mich 197, 204, the latter quoting Mr. Justice Talbot Smith as follows:

"The statute (assured clear distance) must be reasonably construed. A literal reading thereof would compel us to say that in every case of collision the statute has been violated by the mere fact of collision alone. The driver has either been going too fast, or, if driving at a reasonable speed, has permitted his attention to wander and thus has not perceived the obstruction in time to stop. Such literal interpretation would make the driver an insurer against any collision in which he might become involved. We cannot assume that the legislature intended such a result. The situations under

---

[1] "But we do not think the rule should be weakened by engrafting exceptions on it or modifying it. Its observance bespeaks the safety of human life and limb and of property. Had it been observed on the night in question, this unfortunate accident would not have happened." *Lett* v. *Summerfield & Hecht, supra,* at 703.

which collisions occur are infinite in complexity and variety, and, to accomplish justice in particular cases, we have been forced to create a number of exceptions to the statutory edict." (From *Sun Oil Co.* v. *Seamon,* 349 Mich 387, 411, 412.)

This last is in accord with Restatement's comment "c" under title A, "Function of Legislature", 2 Restatement, Torts, § 286, p 752:

"Many statutes and ordinances are so worded as apparently to express a universally obligatory rule of conduct. Such enactments, however, may in view of their purpose and spirit be properly construed as intended to apply only to ordinary situations and to be subject to the qualification that the conduct prohibited thereby is not wrongful if, because of an emergency or the like, the circumstances justify an apparent disobedience to the letter of the enactment." 2 Restatement, Torts, p 754.

The *Nass* and *Dismukes Cases,* to which *Rytkonen* v. *City of Wakefield,* 364 Mich 86, and *Tacie* v. *White Motor Co.,* 368 Mich 521, should be added, definitely bring the assured-clear-distance rule to qualification by the test of due or ordinary care, exercised in the light of the "attending conditions." See *Nass* at 132, *Dismukes* at 205, and *Tacie* at 529. Such "attending conditions" play an important part in application of the rule to these cases of Patzer.

Plaintiffs moved at close of proofs for peremptory instruction that the defendant driver had been shown guilty of causal negligence. They relied and now rely upon the statutory presumption of negligence arising from a rear-end collision (CLS 1956, § 257.402 [Stat Ann 1960 Rev § 9.2102]) and upon the assured-clear-distance rule above. The motion was denied and the cases were submitted to the jury. From a verdict and judgment for defendants, plaintiffs appeal.

· The case portrays what few except residents of Michigan's northern peninsula know from experience; that winter transforms what is said to be America's most scenic and naturally attractive waterfront drive—M-28 skirting Lake Superior between Munising and Marquette—into a place of constant danger for the motorist who does not know that, when Hiawatha's "big sea water" manufactures its own blizzard, the safest way to get through the exposed stretches of the way is to wait for and then "follow the plow" with its high-borne rotating yellow flasher light.

The facts are both extreme and unusual. That our current view thereof must be with due favor to the defendants is of no great importance since there is but little dispute with respect to the weather conditions and causative events. One only of the important facts stands in serious testimonial dispute; whether the Patzer car was stopped, or was proceeding ahead, as defendants' ambulance approached from the rear. That issue must, for present purposes, be resolved as the defendant driver and his assistant testified; that the Patzer car was stopped at the time on the banked and narrowed roadway.

. The "attending conditions" were such—this again is said on favorable view and is not to be taken as standard jury instruction—as to require motoring due care fitted to such conditions rather than to ordinary motoring conditions as contemplated by the assured-clear-distance statute. The plaintiff driver and the defendant driver, one after the other, entered into the first of several tempest-swept, snow-banked, and substantially visionless passageways of M-28 that afternoon in March of 1959. One probably did not know that, when Superior blows by her winter wont directly across the highway where it skirts Murray Bay and Au Train Bay, the weatherwise local motorist usually stays in or heads for

less exposed ways.  Once he enters such exposed ways, constant risk is his passenger until he emerges at some safe place to stop or turn inland.  To stop for want of driving vision or other reason is to invite a collision from the rear.  To get out of one's car, the passageway being narrow and the area being a lonely one in winter, is to court personal injury or worse.  Requisite vigilance demands that the motorist continue on, fast enough to minimize the danger of collision from the rear and slow enough to minimize the danger of collision with what may loom ahead.  In the tone of Restatement, it isn't possible at all times to obey the letter of the enactment requiring an assured clear distance ahead, and still obey the variable and jury-determinable requirement of due care.

The investigating and locally experienced State police officer described these weather conditions, relating them to the afternoon of the collision, as "very hazardous."  The trial judge, in his opinion denying motion for new trial, tells about the "notorious reputation" of M-28 where it skirts Lake Superior in Alger county.[2]  The assigned county snowplow driver, making steady effort to keep the way between Munising and Christmas (a post office on M-28 some 5 miles west northwest of Munising) clear to pavement width, made "twelve passes or plows through this area" between noon of the accident day and occurrence of the accident at 3:30 p.m.  This work left a 6-foot high bank of snow over which the wind from the lake blew more and more swirling snow into the narrowed way.  Such is the factual setting of

---

[2] Quoting Judge Baldwin:
"This stretch of road has a notorious reputation as a bad portion of the highway when there is snow and there is a north or northwest wind blowing, because the wind blows off the lake picking up snow and blowing it across the road, hiding the road and making visibility at a minimum.  On the day in question, this stretch of road was bad."

these appeals by plaintiffs, the bearers of the burden
of proof,[3] for ruling that the trial judge should have
instructed liability of defendants as a matter of law.

Plaintiffs Perry Patzer and Shirley Patzer, hus-
band and wife, left their Detroit home March 21,
1959, at 5 o'clock in the morning, bound for Mar-
quette. They reached Munising about 3 in the after-
noon. Proceeding westward from Munising on
M-28, they reached the first of the exposed portions
to which reference has been made. According to
Mr. and Mrs. Patzer, their car was immediately
slowed down and the lights thereof were turned on.
As the car proceeded on, as they claim, or after it
had been stopped as defendants claim, it was struck
violently from the rear by defendants' westbound
ambulance, of which more later. Mr. and Mrs.
Patzer had driven, in Judge Baldwin's words, about
"1/2 mile into the swirl of snow."

Not long after plaintiffs left Munising the defend-
ant ambulance driver received a call, from the State
police post at Munising, to effect that "there was a bad
accident at Au Train, a fellow was lying in the snow
and bleeding, and to get out there as fast as I can."
Au Train is some 6 miles west of Christmas on M-28.
The driver and his assistant left Munising immedi-
ately in response to the call, having first turned on
the rotating red flasher signal and the regular lights
of the ambulance, and thereafter having engaged the
siren of the ambulance at its continuous highest
pitch. When the defendant driver approached the
exposed portion of the roadway he slowed his speed
to "about 20 or 25 miles per hour." Proceeding thus,
and with visibility ahead almost nil, he and his
assistant did not see plaintiffs' car ahead until sight
and the ensuing collision were almost instantaneous.

---

[3] See Professor Sunderland's paper, "Directing a Verdict for the
Party Having the Burden of Proof", 11 Mich L Rev 198.

The foregoing review foretells conclusion that the question of negligence as charged against defendants was properly for jury consideration and determination. That the driver of the ambulance did not have an assured clear distance ahead when he approached and struck the Patzer car must be taken for granted. That his conduct amounted to actionable negligence, the weather having altered and affected—this is on favorable view of course—customary safety measures, cannot be judge-declared on' review of plaintiff's said motion. We hold instead that the circumstances were such that the triers of fact had a right to find, but perforce were not obliged to find, that the ambulance driver proceeded through the swirl according to the ever circumstantially variable standard of due care. The question is controlled as it usually is by the circumstances of whatever action or inaction the accuser would have branded as negligence.

"It is not what one does, considered of itself and apart from all other considerations, which is to be judged in determining whether there has been an exercise of ordinary care. It is to what he does as related to the circumstances under which he acts that the test is to be applied." *Brebner* v. *Sidney Hill Health System, Inc.,* 269 Mich 541, 544; rule followed in *Flynn* v. *Kramer,* 271 Mich 500, 505; *Warwick* v. *Blackney,* 272 Mich 231, 237; *Davis* v *New York Central R. Co.,* 348 Mich 262, 268; *Normand* v. *Thomas Theatre Corp.,* 349 Mich 50, 57, 58.

As for the mentioned statutory presumption of negligence, it is sufficient to say that the trial judge read the statute to the members of the jury and instructed that they should determine whether the presumption had been overcome. His instruction was:

"On the face of it, the defendant is guilty of negligence in striking the Patzer car. If you find, however, he was driving at a moderate speed and keeping a proper lookout, and because of the conditions over which he had no control and which were not foreseeable, such as a sudden blowing of the wind that hid from view the car ahead of him which suddenly slowed down, a thing that could not have been reasonably expected, then there is a situation in which you should apply common sense and judgment in determining whether or not, under all of the circumstances, the presumption of negligence should stand or whether or not it has been rebutted. That is the issue in this case."

In the absence of request for more specific instruction (see extended discussion in *Garrigan* v. *LaSalle Coca-Cola Co.*, 362 Mich 262), we find no reason for disagreement with the method employed for jury determination of whether the presumption and its prima facie effect had been overcome by testimony. That the question was one for jury determination seems clear. See authorities considered in *Garrigan,* including the *Gillett, Cebulak,* and *Krisher Cases,*[4] cited in *Garrigan* at page 264. That the jury found that the presumption had been overcome, and that it—the presumption—did actually "disappear" in the juryroom, seems equally clear.

In view of what has been said, there is no occasion for considering whether the defendant ambulance driver, while on the testified emergency mission with visual and audible warning devices in operation, was exempt to any legal extent from obeying the assured-clear-distance rule. See generally recent annotation, "Liability for personal injury or

---

[4] *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410; *Cebulak* v. *Lewis*, 320 Mich 710 (5 ALR2d 186); *Krisher* v. *Duff*, 331 Mich 699.—Reporter.

property damage from operation of ambulance,"
84 ALR2d 121.

Judgment affirmed. Costs to defendants.

CARR, C. J., and DETHMERS, KELLY, SOURIS, SMITH,
and O'HARA, JJ., concurred with BLACK, J.

KAVANAGH, J., concurred in result.