MOORE v SPANGLER

Docket No. 58081. Argued May 3, 1977 (Calendar No. 1).—Decided
    October 6, 1977.

Edna Moore brought an action for damages arising from injuries
    when her car was struck from the rear by a vehicle driven by
    defendant Harold M. Spangler. The 52nd District Court, Chris-
    topher C. Brown, J., instructed the jury, over plaintiff's objec-
    tion, on the sudden emergency doctrine. The jury returned a
    verdict for the plaintiff of $1,344. The trial court denied plain-
    tiff's motion for *additur* or a new trial, and the Oakland Circuit
    Court, Farrell E. Roberts, J., denied the plaintiff's appeal
    without hearing oral argument, which had been requested by
    both parties. The Court of Appeals, D. E. Holbrook, P. J., and
    T. M. Burns and D. E. Holbrook, Jr., JJ., denied leave to appeal
    (Docket No. 26741). Plaintiff appeals. *Held:*

    1. Since the statute providing for the right to appeal from
    district court to circuit court is silent as to any right to oral
    argument, there is no statutory right to oral argument in cases
    on appeal from district court to circuit court. The Equal Protec-
    tion Clauses of the United States and Michigan Constitutions
    do not require uniformity of procedure. It is a well settled rule
    that the right to equal protection of the law is not denied by a
    state law or course of procedure where the same law or course

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 584.
[2] 4 Am Jur 2d, Appeal and Error § 684.
[3] 16 Am Jur 2d, Constitutional Law § 536.
[4] 16 Am Jur 2d, Constitituonal Law § 542.
[5] 16 Am Jur 2d, Constitutional Law § 485 *et seq.*
[6] 16 Am Jur 2d, Constitutional Law § 546.
[7, 8] 5 Am Jur 2d, Appeal and Error § 946, 965. 22 Am Jur 2d,
    Damages § 398.
[8] Court's power to increase amount of verdict or judgment over
    either party's refusal or failure to consent to addition. 56 ALR2d
    213.
[9] 22 Am Jur 2d, Damages §§ 398, 399.
[10, 11] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 359, 360,
    1021, 1030.
[12] 8 Am Jur 2d, Automobiles and Highways §§ 1030, 1034, 1035.

of procedure would have been applied to any other person in the same state under similar circumstances and conditions. In the instant case the plaintiff has been afforded the same rights in her appeal from district court to circuit court as any other person would have been afforded under like circumstances. Plaintiff has not shown that invidious discrimination results from the challenged classification, that it penalizes the exercise of some fundamental right, or that it has no reasonable basis.

2. A verdict which ignores uncontroverted out-of-pocket expenses of a plaintiff is inadequate on its face and must be reversed. However, trial courts have a large measure of discretion in the matter of granting new trials and this court will not interfere unless the abuse of that discretion is palpable. The question on appeal is whether the verdict is so clearly or grossly inadequate and so contrary to the great weight of evidence pertaining to damages sustained by the plaintiff as to shock the judicial conscience. In the instant case it is apparent that either the reasonableness or the necessity of all of the plaintiff's out-of-pocket expenses, with the exception of the $66.50 paid for emergency room treatment on the day of the accident, was placed in question by the cross-examination of the plaintiff's witnesses and the testimony of the defendant. Therefore, these damages were not conclusively and irrefutably established, and the trial judge did not abuse his discretion in denying the plaintiff's motion for *additur* or in the alternative a new trial.

3. The verdict was within the range of testimony regarding the plaintiff's pain and suffering and was not so inadequate as to shock the judicial conscience. Rather than ignoring the plaintiff's pain and suffering, it seems obvious that the jury found that the plaintiff did not experience as much pain and suffering from the injuries she sustained in the accident as she claimed, or that the defendant's negligence was not the proximate cause of the pain and suffering the plaintiff did experience.

4. The facts in the case at bar did not warrant the sudden emergency instruction. Even accepting the defendant's testimony that the pavement was in fact icy, such a condition would not be unusual for a January day in Michigan. Nor was the situation which presented itself to defendant "unexpected" within the meaning of the sudden emergency doctrine. However, the jury in the instant case resolved the liability issue in favor of the plaintiff despite the improper instruction. Plaintiff's theory that the erroneous instruction tended to reduce the damages awarded is overly speculative and predicated on the

erroneous assumption that her damages were "uncontroverted". The plaintiff was not prejudiced by the erroneous instruction and therefore the trial court should not be reversed.

Justice Levin dissented on the ground that it is not the plaintiff's burden to show that she was prejudiced by the erroneous instruction but the defendant's burden to show that the error did not affect the result. The jurors' verdict may have been the product of a compromise to obtain the votes of jurors who, because of the erroneous instruction, originally intended to vote for no cause of action. There being no basis for concluding that the error did not affect the result, plaintiff is entitled to a new trial.

Affirmed.

OPINION OF THE COURT

1. APPEAL AND ERROR—CONSTITUTIONAL LAW—DUE PROCESS.

Appellate review is not a necessary part of a legal system, required by due process, nor is the right of appeal an inherent or inalienable right (US Const, Am XIV).

2. APPEAL AND ERROR—APPEAL FROM DISTRICT COURT—ORAL ARGUMENT.

The statute providing for the right to appeal from district court to circuit court does not provide a right to oral argument (MCL 600.8342; MSA 27A.8342).

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—PROCEDURE.

The Equal Protection Clauses of the United States and Michigan Constitution do not require uniformity of procedure (US Const, Am XIV; Const 1963, art 1, § 2).

4. CONSTITUTIONAL LAW—EQUAL PROTECTION.

The equality of rights protected by the Michigan Constitution is the same as that preserved by the Fourteenth Amendment to the Federal Constitution (US Const, Am XIV; Const 1963, art 1, § 2).

5. CONSTITUTIONAL LAW—EQUAL PROTECTION.

The right to equal protection of the law is not denied by a state law or course of procedure where the same law or course of procedure would have been applied to any other person in the same state under similar circumstances and conditions (US Const, Am XIV; Const 1963, art 1, § 2).

6. APPEAL AND ERROR—APPEALS FROM DISTRICT COURT—ORAL ARGU-
   MENT—EQUAL PROTECTION—DUE PROCESS.

   Refusal of a circuit court to allow oral argument on an appeal to
   circuit court from district court does not preclude an appellant
   from exercising an effective right to appeal in violation of the
   Equal Protection Clause where the appellant has not shown
   that invidious discrimination results from the classification of
   which she complains, that it penalizes the exercise of some
   fundamental right, or that it has no reasonable basis (US
   Const, Am XIV; Const 1963, art 1, § 2; MCL 600.8342; MSA
   27A.8342).

7. DAMAGES—EVIDENCE—VERDICT—INADEQUACY—NEW TRIAL.

   A jury verdict which ignores the uncontroverted out-of-pocket
   expenses of the plaintiff is inadequate on its face and must be
   reversed; however, trial courts have a large measure of discre-
   tion in the matter of granting new trials on the ground that
   the verdict is inadequate and appellate courts will not interfere
   unless the abuse of discretion is palpable (GCR 1963, 527).

8. DAMAGES—EVIDENCE—VERDICT—INADEQUACY—ADDITUR—NEW
   TRIAL.

   The question before an appellate court considering a claim that a
   trial court erred in denying a motion for *additur* or in the
   alternative a new trial is whether the jury verdict was so
   clearly or grossly inadequate and so contrary to the great
   weight of evidence pertaining to damages sustained by the
   plaintiff as to shock the judicial conscience (GCR 1963, 527).

9. DAMAGES—EVIDENCE—VERDICT—INADEQUACY.

   A plaintiff in an automobile negligence suit did not conclusively
   and irrefutably establish her damages as uncontroverted by the
   mere fact that she testified that she had made certain accident-
   related expenditures or by the fact that some of her medical
   bills were admitted into evidence where either the reasonable-
   ness or the necessity of some of the expenses was placed in
   issue by the cross-examination of the plaintiff's witnesses and
   the testimony of the defendant.

10. AUTOMOBILES—NEGLIGENCE—REAR-END COLLISION—INSTRUCTIONS
    TO JURY—SUDDEN EMERGENCY.

    A defendant whose automobile struck the rear end of the plain-
    tiff's automobile was not entitled to an instruction on the
    sudden emergency doctrine where, even accepting the defend-
    ant's testimony that the pavement was icy, such a condition
    would not be unusual for a January day in Michigan, nor was
    the situation that the plaintiff's car had stopped on a city street

in response to a sudden stop of two vehicles directly in front of her "unexpected" within the meaning of the sudden emergency doctrine.

11. AUTOMOBILES—NEGLIGENCE—INSTRUCTIONS TO JURY—SUDDEN EMERGENCY.

A plaintiff in an automobile negligence action was not prejudiced by an improper instruction to the jury on the sudden emergency doctrine where the jury resolved the liability issue in favor of the plaintiff despite the improper instruction, and where the plaintiff's theory that the improper instruction tended to reduce the damages awarded was overly speculative and predicated on the erroneous assumption that her damages were uncontroverted.

DISSENTING OPINION BY LEVIN, J.

12. DAMAGES—VERDICT—INSTRUCTIONS TO JURY—PREJUDICE—NEW TRIAL.

*It is not the plaintiff's burden to show that a jury's verdict was prejudiced by an erroneous instruction on sudden emergency in a rear-end automobile collision; rather it is the defendant's burden to show that the error did not affect the result, because the jurors' verdict may have been the product of a compromise to obtain the votes of jurors who, because of the erroneous instruction, originally intended to vote for no cause of action.*

*Franklin, Petrulis & Lichty, P. C.* (by *James T. Mellon; Daniel J. McCarthy,* of counsel) for plaintiff.

*Martin, Bohall, Joselyn, Rowe & Jamieson, P. C.* (by *William G. Jamieson* and *Donald W. Faleris)* for defendant.

FITZGERALD, J. Plaintiff Edna Moore was injured in a rear-end automobile collision. Plaintiff commenced this action for negligence against defendant Harold Spangler, the driver of the automobile which struck plaintiff's automobile. The case was tried in district court, and the jury found defendant liable and awarded plaintiff $1,344 in dam-

ages. Plaintiff's motion for *additur* or in the alternative a new trial was denied by the district court, and on appeal the circuit court affirmed. Plaintiff raises four issues in her appeal to this Court:

1. Whether the refusal of the circuit court to allow oral argument on plaintiff's appeal from the district court, where such oral argument was specifically requested by all parties, precluded plaintiff from exercising an effective right to appeal in violation of the rights to due process and equal protection guaranteed in the Michigan and United States Constitutions.

2. Whether the trial court erred in denying plaintiff's motion for *additur* or in the alternative a new trial when plaintiff's uncontroverted out-of-pocket expenses exceeded the jury verdict in favor of plaintiff.

3. Whether the trial court erred in denying plaintiff's motion for *additur* or in the alternative a new trial when the jury failed to consider plaintiff's pain and suffering in its verdict.

4. Whether the trial court erred in instructing the jury as to the sudden emergency doctrine.

The Court of Appeals denied plaintiff's application for leave to appeal. This Court granted leave to appeal on July 8, 1976. 397 Mich 821 (1976). We affirm.

FACTS

On January 7, 1969, plaintiff was traveling north in the left hand lane of Dequindre near Riggs in the City of Warren. Plaintiff testified that she brought her car to a stop in response to a sudden stop of two vehicles directly in front of her, and that as she did so, she was struck from the rear by a vehicle driven by defendant. According

to defendant, his car was not traveling more than four or five miles per hour at the time of impact.

Plaintiff further testified that upon impact she was thrown back and forward and that she experienced back pain and "felt woozy". Soon after the accident plaintiff went to a nearby gas station and called her son, who came to the gas station and took her to Martin Place Hospital for X-rays. The results of the X-rays were negative for any fractures or dislocations. After the X-rays were taken, plaintiff and her son returned to the gas station, and plaintiff then drove her car to her son's home. Plaintiff testified that at this point the pain in her back and neck was severe and that she telephoned her family physician, Dr. Joseph A. Walker, to make an appointment.

On the following morning, plaintiff's daughter-in-law drove her to Dr. Walker's office for her appointment. Dr. Walker examined plaintiff and treated her with shortwave therapy, manipulation, and the use of analgesics. Such treatment was continued until April 20, 1970, when plaintiff had her last appointment for back and neck pain with Dr. Walker. Dr. Walker testified at his deposition taken on October 19, 1971, that "at the date of my last examination this patient was symptom free" and that she was discharged "with no complaints either in the cervical area or the low back".

On September 3, 1971, at the recommendation of her attorney, plaintiff visited Dr. Lawrence Wiseman for further treatment for her back and for treatment for her right hip. Plaintiff testified at her deposition taken on March 24, 1970, that the problem with her hip was "in conjunction with the back" and started bothering her approximately two or three months after the accident. At a videotape deposition taken on February 13, 1973, Dr.

Wiseman testified that he saw plaintiff on three subsequent occasions for treatment, but such treatment was discontinued because plaintiff's condition had not improved. Dr. Wiseman further testified that plaintiff had a congenital abnormality of the lumbar spine consisting of an extra (sixth) vertebra and that such an abnormality "would predispose one to some degree to a more significant injury and would prolong healing and cause a problem".

Plaintiff filed suit against defendant for negligence on October 1, 1969, and prayed for a judgment against defendant in the amount of $200,000 to compensate her for moneys expended for repair to her automobile and medical treatment, for enduring pain and suffering and for lost wages. Defendant denied any negligence in his answer and claimed contributory negligence as an affirmative defense.

On April 20, 1972, the case was to be tried at circuit court, but a mistrial was declared, the jury was discharged, and the case was adjourned. The case was subsequently remanded to district court for trial, it appearing to the circuit court that less than $10,000 was involved in the case. The case finally was tried before a jury in the 52nd Judicial District Court on May 23 and May 24, 1974. Prior to closing arguments, plaintiff made a motion for directed verdict as to the question of liability based on MCLA 257.402; MSA 9.2102 and on the case of *Vander Laan v Miedema,* 385 Mich 226; 188 NW2d 564 (1971). The trial court denied this motion. At this point in the proceedings, plaintiff argued that the jury should not receive an instruction on the sudden emergency doctrine under the facts of this case, but the trial court ruled that such instruction was proper. After closing argu-

ments, the court gave an instruction on the sudden emergency doctrine, and plaintiff objected. The jury returned a verdict in favor of plaintiff in the amount of $1,344.

Plaintiff subsequently brought a motion for *additur* or in the alternative a new trial, but the motion was denied. Plaintiff then appealed to the circuit court, and the circuit judge denied plaintiff's appeal from the trial court's denial of her motion without hearing oral arguments, notwithstanding the fact that both plaintiff and defendant had specifically requested an opportunity to present such arguments. Plaintiff's motion for a rehearing on denial of appeal was also denied by the circuit judge.

## ISSUES

### I

The first issue plaintiff raises is whether the circuit court's refusal to allow oral argument on plaintiff's appeal from district court, where such argument was specifically requested, precluded plaintiff from exercising an effective right to appeal in violation of the rights to due process and equal protection. Plaintiff would have us rule in the affirmative. It should be noted that with the repeal and replacement of GCR 1963, 701, effective July 25, 1977, the right to oral argument on appeals to circuit court does now exist. See GCR 1963, 701.10. However, this recently adopted rule has prospective effect only and is thus of no consequence to the case at bar.

It has been well recognized that "[appellate] review procedure is not a necessary part of a legal system, required by due process, nor is the right of appeal an inherent or inalienable right". 4 Am Jur

2d, Appeal and Error, § 1, p 533. In *Chicago, D & C GTJ R Co v Simons,* 210 Mich 418; 178 NW 12 (1920), this Court stated:

"This court, in consonance with other courts of last resort, has uniformly held that appeals are statutory, do not exist at common law, and that the legislature in its discretion may prescribe in what cases and under what circumstances appeals may be taken. [Citations omitted.] Plaintiff must, therefore, look to the statute and to the statute alone for its right to be here heard." 210 Mich 418, 420.

The right to appeal from district court to circuit court is provided for by MCLA 600.8342; MSA 27A.8342. The statute provides as follows:

"Appeals shall be to the circuit court for the county in which the judgment is rendered. All appeals from final judgments shall be as of right and all other appeals shall be by application. All appeals to the court of appeals from judgments entered by the circuit court on appeals from the district court shall be by application."

Plaintiff contends that this "grant of a right to appeal bestows upon the appellant a right to oral argumentation before the circuit court where such a request has been properly and timely presented". We disagree. Since the statute providing for the right to appeal from district court to circuit court is silent as to any right to oral argument, there is no statutory right to oral argument in cases on appeal from district court to circuit court.

Plaintiff next argues that she has been denied equal protection of the law guaranteed by US Const, Am XIV, and Const 1963, art 1, § 2, since parties appealing their cases from circuit court to the Court of Appeals are guaranteed the right of

oral argument by GCR 1963, 819.1. However, the equal protection clause of the United States Constitution does not require uniformity of procedure. *Dohany v Rogers,* 281 US 362; 50 S Ct 299; 74 L Ed 904 (1930). Nor does Const 1963, art 1, § 2 require uniformity of procedure, since "[t]he equality of rights protected by our Constitution is the same as that preserved by the Fourteenth Amendment to the Federal Constitution". *Naudzius v Lahr,* 253 Mich 216, 222; 234 NW 581 (1931). Of especial relevance to the instant case is the well-settled rule that the right to equal protection of the law is not denied by a state law or course of procedure where the same law or course of procedure would have been applied to any other person in the same state under similar circumstances and conditions. *Tinsley v Anderson,* 171 US 101; 18 S Ct 805; 43 L Ed 91 (1898). In *Templar v State Board of Examiners of Barbers,* 131 Mich 254; 90 NW 1058 (1902), this Court, quoting the United States Supreme Court, *Barbier v Connolly,* 113 US 27, 31; 5 S Ct 357; 28 L Ed 923 (1885), said:

"The fourteenth amendment * * * undoubtedly intended * * * that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights * * * ." 131 Mich 254, 256.

In the instant case, plaintiff has been afforded the same rights in her appeal from district court to circuit court as any other person would have been afforded under like circumstances. Indeed, the circuit court was open to plaintiff on the same conditions as it was to others in like circumstances with the same rule as to oral argument.

Plaintiff has not shown that invidious discrimination results from the jurisdictional classification

of which she complains. *Loving v Virginia,* 388 US
1; 87 S Ct 1817; 18 L Ed 2d 1010 (1967). Nor has
plaintiff shown that the classification penalizes the
exercise of some fundamental rights. *Shapiro v
Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d
600 (1969). Plaintiff also has failed to show that
the jurisdictional classification in question has no
reasonable basis and thus has failed to sustain her
burden of proof as to this issue. *Wilkins v Ann
Arbor City Clerk,* 385 Mich 670; 189 NW2d 423
(1971). Accordingly, we find that plaintiff's chal-
lenge of the jurisdictional classification on the
grounds that it violates equal protection of the law
is without merit.

## II

Plaintiff contends that the trial court erred in
denying her motion for *additur* or in the alterna-
tive a new trial when her "uncontroverted" out-of-
pocket expenses exceeded the jury verdict in her
favor.

GCR 1963, 527.1 provides:

"A new trial may be granted to all or any of the
parties and on all or part of the issues whenever their
substantial rights are materially affected, for any of the
following causes:"

and lists as one of the causes:

"(4) A verdict which is clearly or grossly inadequate
or excessive".

GCR 1963, 527.6, pertaining to *remittitur* and
*additur,* provides:

"When a finding is made that the only error in the

trial is the inadequacy or excessiveness of the verdict, the court may deny a motion for new trial on condition that within 10 days the non-moving party consents in writing to the entry of judgment of an amount found by the judge to be the lowest or highest amount respectively which the evidence will support. If the moving party appeals, this agreement shall in no way prejudice the party so agreeing, in arguing on appeal, that the original verdict was correct and if he prevails the original verdict may be reinstated by the supreme court."

Plaintiff cites *Zielinski v Harris,* 289 Mich 381; 286 NW 654 (1939); *Hugener v Michlap,* 2 Mich App 157; 139 NW2d 132 (1966); *Cooper v Christensen,* 29 Mich App 181; 185 NW2d 97 (1970); and *Jackson v Gregory,* 32 Mich App 301; 188 NW2d 629 (1971), in reliance upon the well-settled rule that where a jury verdict ignores the uncontroverted out-of-pocket expenses of the plaintiff, such verdict is inadequate on its face and must be reversed.

While plaintiff has correctly stated the law, it is also a well-recognized rule that "[t]rial courts have a large measure of discretion in the matter of granting new trials and this court will not interfere unless the abuse of that discretion is palpable". *Brown v Arnold,* 303 Mich 616, 627; 6 NW2d 914 (1942). Quoting *Cleven v Griffin,* 298 Mich 139; 298 NW 482 (1941), this Court in *Brown* said:

" 'No complaint is made by appellants that the jury was not properly instructed as to the element of damages. No claim is made that the verdict was obtained by improper methods, prejudice or sympathy. There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous v Conor,* 266 Mich 397 [254 NW 143 (1934)]; *Weil v*

*Longyear,* 263 Mich 22 [248 NW 536 (1933)]. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood v Earl Paige & Co,* 239 Mich 485 [214 NW 402 (1927)]. We do not usually substitute our judgment for that of the jury *unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy. Watrous v Conor, supra; Michaels v Smith,* 240 Mich 671 [216 NW 413 (1927)].' " 303 Mich 616, 628–629.

This principle was reaffirmed in *Teller v George,* 361 Mich 118; 104 NW2d 918 (1960); *A'Eno v Lowry,* 367 Mich 657; 116 NW2d 730 (1962); *Greinke v Yellow Cab Co of Muskegon,* 368 Mich 611; 118 NW2d 835 (1960); *Trapp v King,* 374 Mich 608; 132 NW2d 640 (1965).

The question before this Court then is whether the jury verdict in the instant case was so "clearly or grossly inadequate" and so contrary to the great weight of evidence pertaining to damages sustained by plaintiff as to shock the judicial conscience. A review of the cases upon which plaintiff relies is thus in order to determine whether the rule enunciated therein is applicable to the case at bar.

In *Zielinski v Harris, supra,* this Court held a jury verdict of $1,000 grossly inadequate and contrary to the great weight of the evidence pertaining to damages sustained, where the evidence clearly showed that plaintiff's decedent had a life expectancy of 26 years; that he earned on the average of $1,500 to $2,000 per year; that medical bills resulting from the accident totaled $115; that the damage to his automobile amounted to $625; and that his injuries were severe and he suffered intense pain during the four-day period between the time of the accident and his eventual death.

In *Hugener v Michlap, supra,* where defendant

admitted liability but contested damages, the Court upheld a verdict of $15,000 for plaintiff passenger, but reversed a verdict of $1.05 for plaintiff driver on the basis that there was sufficient testimony, which was not controverted, "to support a claim by the husband for out of pocket expenses, such as the $100 deductible collision expense". 2 Mich App 157, 159. A new trial limited to a determination of damages was ordered for plaintiff driver, since he "conclusively and irrefutably established a portion of his alleged damages in an amount grossly in excess of the jury verdict * * * ". 2 Mich App 157, 160.

In *Cooper v Christensen, supra,* plaintiff was attacked by a group of youths at defendant's drive-in and sustained injuries to his left ankle requiring hospitalization and surgery. Plaintiff wore a nonwalking cast for six months and was thus unable to work. Uncontroverted testimony at trial established plaintiff's damages at $1,139.25 for medical costs and $1,980.30 in lost wages, minus $1,037.94 plaintiff had received from his assailants. Reversing the jury verdict of $675, the Court of Appeals, in a majority opinion, followed the general rule that "[a] jury award which ignores uncontroverted out-of-pocket expenses is inadequate on its face". 29 Mich App 181, 184.

In *Jackson v Gregory, supra,* the Court of Appeals again ordered a new trial as to damages only when uncontroverted out-of-pocket expenses were greater than the jury verdict. In that case, the two plaintiffs "proved" that their out-of-pocket damages were $50.15 and $263.03, and the jury returned a verdict of $29 and $136 respectively. In reversing the verdict, the Court relied on the above-quoted language in *Cooper v Christensen, supra.*

The four cases cited by plaintiff all have in common the fact that the evidence pertaining to damages was never controverted. Indeed, in all of these cases it was patently clear that the jury, having found that liability existed, breached its duty to assess damages in accordance with the evidence presented. In *Zielinski* and *Cooper,* neither the necessity of medical treatment, nor the reasonableness of its duration, was ever put in issue. Further, the amount of lost wages in those two cases was never contested, for in *Zielinski* plaintiff's decedent, whose average income had been between $1,500 and $2,000 per year and who had a life expectancy of 26 years, died four days after the accident, and in *Cooper,* plaintiff was in a nonwalking leg cast for six months. In *Hugener,* the Court found that plaintiff had "conclusively and irrefutably" established that at least part of his damages were grossly in excess of the jury verdict, and in *Jackson,* the Court found that the plaintiffs "proved" their out-of-pocket damages at trial.

In the instant case, however, it is apparent from the trial transcript that either the reasonableness or the necessity of all of plaintiff's out-of-pocket expenses, with the exception of the $66.50 paid for emergency room treatment on the day of the accident, was placed in question by the cross-examination of plaintiff's witnesses and the testimony of defendant. Indeed, it is clear that plaintiff did not "conclusively and irrefutably" establish her damages as uncontroverted by the mere fact that she testified that she had made certain accident-related expenditures or by the fact that some of her medical bills were admitted into evidence.

Plaintiff claims that her "uncontroverted" out-of-pocket damages were as follows:

1) Treatment by Dr. Walker......... $908.00
2) Medication ..................... 336.00
3) Automobile Deductible .......... 100.00
4) Martin Place Hospital
        Emergency Room ............. 66.50
5) Treatment by Dr. Wiseman ....... 146.00
6) Lost Wages ..................... 3,243.00
                                   $4,799.50

Dr. Walker testified that between January 8, 1969, and April 20, 1970, plaintiff came to his office on 93 occasions for osteopathic therapy for the cervical area and the low back. However, the cross-examination of Dr. Walker revealed that the plaintiff had no nerve or neurological problems as a result of the accident and that plaintiff had experienced, and had been treated for, cervical and dorsal pain prior to the accident. In fact, Dr. Walker testified that plaintiff had come to him for cervical muscle tension on August 2, 1968, approximately five months before the accident. Moreover, Dr. Walker testified that plaintiff "was complaining of more pain than I would anticipate with this type of injury"; that her treatment was lengthy in comparison to others; and that factors other than the accident tended to prolong treatment.

In regard to the stack of prescription receipts, which were admitted as exhibit 4, the testimony indicates that the medication prescribed to plaintiff by Dr. Walker was not all directly related to the accident. In fact, it became apparent from the cross-examination of Dr. Walker that plaintiff had prescriptions subsequent to the accident for totally unrelated medical reasons and that Dr. Walker was unsure whether much of the medication he prescribed for plaintiff after the accident was for her injuries allegedly sustained in the accident, since plaintiff had been taking the same medica-

tion shortly before the accident for the same or similar ailments.

Another element of plaintiff's allegedly "uncontroverted" damages which was put in issue was her lost wages. Plaintiff testified that she was unable to work at all for almost a month after the accident and that she could not work on a full-time basis for more than a year after the accident. However, necessity and reasonableness of missing the amount of work that plaintiff missed was not "conclusively and irrefutably" established. Indeed, defendant testified that when he collided with plaintiff, his automobile was traveling about four or five miles per hour, and thus the jury could have concluded that the collision was merely a tap. Moreover, on cross-examination, Dr. Walker testified that he had never told plaintiff to take any specific length of time off work, but had left it entirely to her discretion.

With respect to the treatment by Dr. Wiseman, which was initially administered on September 3, 1971, more than two and one-half years after the accident, and at the recommendation of plaintiff's attorney, it should be noted that the necessity of such treatment was put in question by the following testimony of Dr. Walker:

*"Q.* And can you tell us, Doctor, if you know, when was the last time that you saw Mrs. Moore and treated her for her injuries as a result of this accident?

*"A.* We discharged Mrs. Edna Moore after a complete examination on April 20, 1970, with no complaints either in the cervical area or the low back."

Plaintiff testified at trial that she paid the $100 deductible of her insurance policy for the repair of her car. However, no body shop receipts were offered into evidence to substantiate this claim,

nor did plaintiff describe the damage done to her car nor indicate where the car was repaired. In fact, defendant testified that the damage to his car was so slight that he never had it repaired. Upon being asked whether there was any damage to plaintiff's car, defendant responded: "If there was, I didn't notice it." While defendant's testimony did not conclusively prove the lack of damage to plaintiff's car, such testimony did put the matter in issue.

Upon reviewing the various elements of plaintiff's damages, it becomes readily apparent that the cases cited by plaintiff are not applicable to the case at bar. Since almost all of plaintiff's alleged damages were controverted, the jury did not breach its duty to assess damages in accordance with the evidence presented. To be sure, the jury in the instant case had ample opportunity to evaluate the testimony and credibility of the witnesses, and thus its verdict is entitled to considerable respect by this Court. As this Court said in *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971), quoting *Fishleigh v Detroit United Railway,* 205 Mich 145; 171 NW 549 (1919):

" 'In personal injury cases the amount of damages is not subject to exact mathematical calculation. Primarily the question is for the jury and we cannot arbitrarily substitute our judgment for that of the triers of the facts. That would be to usurp the functions of the jury.' " 386 Mich 119, 140.

In view of the factual situation presented by the instant case, we cannot say that the jury verdict was so grossly inadequate as to shock the conscience. Accordingly, we find that the trial judge did not abuse his discretion in denying plaintiff's

motion for *additur* or in the alternative a new trial.

We are also unimpressed with plaintiff's speculation that because the jury verdict happened to total exactly the amount of three of plaintiff's special items (treatment by Dr. Walker, $908; medication, $336; automobile deductible, $100; total $1,344) that the jury must have completely disregarded plaintiff's other alleged damages and pain and suffering. The jury may well have concluded that if all items were included, plaintiff should only be compensated $1,344. Nonetheless, this Court will not order a new trial on the basis of conjecture or mere possibilities. *Herman v Ploszczanski,* 369 Mich 252; 119 NW2d 541 (1963).

### III

Plaintiff next argues that the trial court erred in denying her motion for *additur* or in the alternative a new trial because "the jury failed to consider the plaintiff's pain and suffering in the verdict". Plaintiff relies on *Weller v Mancha,* 353 Mich 189; 91 NW2d 352 (1958), and *Fordon v Bender,* 363 Mich 124; 108 NW2d 896 (1961), for the rule that a jury award which ignores pain and suffering is inadequate.

We find plaintiff's argument to be without merit, for the factual situation in the instant case is not comparable with those presented in the *Weller* and *Fordon* cases. In *Weller v Mancha, supra,* the verdict was for the exact amount of damages to which the parties stipulated, and thus, the jury could not have possibly considered the pain and suffering of plaintiff's decedent in assessing its award. In *Fordon v Bender, supra,* the jury foreman's report of the verdict made it clearly apparent that the jury awarded plaintiff special dam-

ages for property damage and medical bills but nothing for pain and suffering. This Court said:

"Once the jury resolved the causation dispute, the great weight of the evidence compelled it to award plaintiff damages for the pain and suffering which naturally followed such injuries found by the jury to have been proximately caused by defendant." 363 Mich 124, 125–126.

Plaintiff bases her contention that the jury "could not have considered" her alleged pain and suffering in reaching its verdict on two erroneous assumptions: (1) that her out-of-pocket expenses were uncontroverted; and (2) that "since the jury did not even consider all the uncontroverted out-of-pocket expenses, it could not have considered the plaintiff's pain and suffering * * * ". Since we have found plaintiff's first assumption unsupported by the evidence and her second assumption to be too speculative and conjectural to warrant consideration, the conclusion is inescapable that plaintiff's argument that the jury ignored her alleged pain and suffering is conjectural at best. Rather than ignoring plaintiff's alleged pain and suffering, it seems obvious that the jury found that plaintiff did not experience as much pain and suffering from the injuries she sustained in the accident as she claimed, or that defendant's negligence was not the proximate cause of the pain and suffering plaintiff did experience.

We find that the jury verdict was within the range of testimony regarding plaintiff's alleged pain and suffering and was not so inadequate as to shock the judicial conscience. On the record before us, we are not prepared to say the trial judge erred in denying plaintiff's motion for *additur* or in the alternative a new trial. His denial of plain-

tiff's motion was in accord with the decisions of this Court in comparable cases.

## IV

Plaintiff's last argument is that the trial court erred in instructing the jury on the sudden emergency doctrine over plaintiff's objection. It is plaintiff's contention that, as in *Vander Laan v Miedema, supra,* the evidence in the instant case did not entitle defendant to the sudden emergency instruction and that such instruction was reversible error.

In his instruction to the jury, the trial judge discussed the applicability of the assured-clear-distance statute[1] and the rear-end collision statute,[2] and then added, over plaintiff's objection:

"However, if you find that the defendant was confronted with a sudden emergency, not of his own making, and if you find that he used ordinary care and was still unable to avoid the violation because of such emergency, then, of course, his violation is excused."

We find that, as in the *Vander Laan* case, the

[1] MCLA 257.627; MSA 9.2327:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead."

[2] MCLA 257.402; MSA 9.2102:

"(a) In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator."

factual background in the case at bar did not warrant the sudden emergency instruction. *Vander Laan v Miedema, supra,* in which the jury returned a verdict of no cause of action, involved a factual situation similar to the instant case. There too, the defendant glanced in his rear-view mirror for a second or so, and when he looked back to the road ahead, the plaintiff's vehicle had stopped and he could not avoid the collision. Holding that these facts did not entitle defendant to an instruction on the sudden emergency doctrine, this Court said:

"To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected'. *Barringer v Arnold,* 358 Mich 594, 599 [101 NW2d 365] (1960).

"The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature. A classical example of the 'unusual' predicament envisioned by the emergency doctrine is provided by *Patzer v Bowerman-Halifax Funeral Home, supra* [370 Mich 350; 121 NW2d 843 (1963)], wherein the accident occurred amid an Upper Peninsula blizzard.

" 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected. A good example of this can be seen in *McKinney v Anderson, supra* [373 Mich 414; 129 NW2d 851 (1964)], where defendant rear-ended a plaintiff's car which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, defendant first saw plaintiff's taillights when he was 400 feet away. However, defendant did not clearly see the peril of plaintiff's stopping until he was about 100–200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the

plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant." 385 Mich 226, 232.

The facts in the instant case indicate that the circumstances surrounding the accident did not make the situation "unusual". The police officer who came to the scene of the accident testified at trial that on the day in question, the sky was cloudy, the traffic was light, the pavement was wet, and the temperature was above freezing. Even if we were to accept defendant's testimony that the pavement was in fact icy, such a condition would not be "unusual" for a January day in Michigan. Nor was the situation which presented itself to defendant "unexpected" within the meaning of the sudden emergency doctrine, for as we said in *Vander Laan:*

"This whole scene continued to be in actual view at all times except for a 'second or so' when Karsten glanced in his rear-view mirror after hitting a bump in the road. While the process of looking in the rear-view mirror may have interrupted defendant's actual view of the scene, he is still held to have had clear view." 385 Mich 226, 233.

While we find that plaintiff is correct in her argument that the trial court erred in instructing the jury on the sudden emergency doctrine, we do not find that such error was prejudicial to plaintiff. Unlike the *Vander Laan* case and other cases cited by plaintiff, the jury in the instant case resolved the liability issue in favor of plaintiff despite the improper instruction. We are not prepared to entertain plaintiff's theory that the trial court's improper instruction on the sudden emergency doctrine "tended to reduce the damages that the jury

awarded" her. Plaintiff's theory as to how she was prejudiced by the improper instruction is overly speculative and predicated on the erroneous assumption that her damages were "uncontroverted". We are satisfied that plaintiff was not prejudiced by the instruction and, therefore, the trial court should not be reversed.

Affirmed. Costs to defendant.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.

LEVIN, J. *(dissenting).* While the jury, in awarding the plaintiff $1,344 in damages, resolved the liability issue in her favor, that decision may have been the product of compromise. Jurors who originally intended to vote for damages in a greater amount than $1,344 may have agreed to reduce the amount to $1,344 to obtain the votes of jurors who, because of the erroneous instruction, originally intended to vote for a no cause. We have no way of knowing that is what occurred, but neither can that be excluded.

It is not plaintiff's burden to show that she was prejudiced by the instructional error; it is rather the defendant's burden to show that the error in instruction did not affect the result. There being no basis for concluding that the error did not affect the result, plaintiff is entitled to a new trial.