*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DARCY WEIDMAN,

        Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY and
ANGELIA JULIANA BARDO,

        Defendants-Appellees.

UNPUBLISHED
April 13, 2026
11:06 AM

No. 371332
Genesee Circuit Court
LC No. 22-117836-NI

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's stipulated order of dismissal in which plaintiff reserved the right to appeal the court's earlier orders granting summary disposition in favor of defendants Angelia Juliana Bardo and Home-Owners Insurance Company under MCR 2.116(C)(10). Plaintiff challenges those earlier orders on appeal. We affirm.

## I. BACKGROUND

This case arises out of a motor-vehicle collision that occurred on September 3, 2021, at approximately 9:00 a.m. On that day, plaintiff and Bardo were driving their vehicles westbound on Crosby Road—a straight, two-lane road with no middle turn lane—when plaintiff rear-ended Bardo.

Bardo testified that the collision occurred while she was turning into her driveway on Crosby. Bardo's home was a few houses down from where Crosby intersects with Genesee Road. According to Bardo, she was driving on Genesee before turning onto Crosby. As Bardo approached the intersection of Genesee and Crosby, she looked in her rearview mirror and did not see a vehicle behind her, turned left onto the westbound lane of Crosby, and proceeded toward her house. She said that, because her house was close to the Crosby-Genesee intersection, she did not "have to speed up or slow down very much to start turning" into her driveway. Plaintiff rear-ended Bardo as she was starting to turn into her driveway.

Plaintiff testified that the collision occurred while she was on her way to work. According to plaintiff, she also turned left onto Crosby from Genesee. Plaintiff said that she had "no idea" how far away she was from Bardo's vehicle when she first saw it, but "we were close." Asked to describe the collision, plaintiff testified, "So I turned on Crosby, started to accelerate, noticed that [Bardo] was at a stop and tried to swerve to avoid her. I swerved left, so my right headlight area got the most damage and hit her driver's side." When asked if she braked "when [she] saw" Bardo's vehicle, plaintiff replied in the affirmative. Plaintiff described the conditions at the time of the accident as "clear and sunny," not "raining or nothing," and opined that weather did not play a role in the collision. She also confirmed that nothing was obstructing her view of Bardo's vehicle. Plaintiff testified that she was not using or looking at her phone before the collision—she was "looking down the road" with both hands on the steering wheel. The posted speed limit on Crosby was 45 miles per hour, and plaintiff testified that she remained below that speed limit at all times. When asked why she was "not able to slow [her] vehicle to a stop" before hitting Bardo, plaintiff said that it was because she "didn't know [Bardo] was stopped," and she hit her brakes "as soon as [she] noticed."

The parties disputed whether Bardo's brake lights and turn signal were working before the collision. Bardo said that they were, while plaintiff said that they were not. The collision so damaged Bardo's vehicle that the turn signal and brake lights could not be tested. The officer who responded to the scene did not issue a ticket to either driver because he "couldn't determine if the brake lights were actually out" on Bardo's damaged vehicle. That officer also testified that the collision occurred 412 feet from the intersection of Crosby and Genesee, and no one disputes this. Neither the responding officer nor plaintiff observed any skid marks on the road following the collision.

Plaintiff sustained injuries in the collision, and she commenced a lawsuit in which she alleged claims against Bardo and Home-Owners that, as relevant to this appeal, hinged on plaintiff's claim that Bardo was negligent, and that Bardo' negligence caused plaintiff's injuries.

Bardo moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's negligence caused the collision, and even if Bardo was also negligent, no reasonable juror could conclude that Bardo was more than 50% at-fault for the collision. Bardo elaborated that, because plaintiff rear-ended Bardo's vehicle, plaintiff was presumed negligent under MCL 257.402(a). Plaintiff could not rebut this negligence by invoking the sudden-emergency doctrine, contended Bardo, because confronting Bardo's stopped vehicle in a residential area was not a sudden emergency, regardless of the operability of Bardo's brake lights or turn signal. This was especially so, Bardo argued, because her vehicle would have been clearly visible to plaintiff for a significant length of time before the collision—it was undisputed that, on the day of the collision, it was clear and sunny, plaintiff had an unobstructed view of the road, the collision occurred 412 feet from where plaintiff turned onto Crosby, and there was no evidence that Bardo had stopped suddenly. Bardo argued that, given these facts, no reasonable juror could find that Bardo was more than 50% at fault for the accident, so any recovery by plaintiff was precluded by MCL 500.3135(2)(b). Home-Owners concurred with Bardo's motion.

In response, plaintiff argued that Bardo was presumptively negligent because, viewing the facts in the light most favorable to plaintiff, Bardo violated six statutes by driving a vehicle without an operating turn signal or brake lights. Plaintiff also disagreed with Bardo's assertion that plaintiff

could not invoke the sudden-emergency doctrine because, according to plaintiff, she "found herself in a sudden emergency" when she "did not see Defendant Bardo's vehicle until moments before impact and it was completely unusual and unsuspected that Defendant Bardo would be stopped in the middle of the roadway." That Bardo's vehicle did not have working brake lights or a working turn signal added to this emergency because it meant that plaintiff had no warning that "Bardo was turning," plaintiff contended.

At a hearing, the trial court agreed with Bardo's argument, reasoning that plaintiff was negligent in causing the accident, there was no sudden emergency, and a reasonable juror could only conclude that plaintiff was more than 50% at fault for the accident. The court explained its ruling as follows:

> I think that the sudden emergency doctrine does not apply in this situation because there is no indication that there was any sudden emergency. Obviously, based on the case law that has been identified and the circumstances that follow, the plaintiff in this matter turned the corner, had 412 feet to see any obstruction in the roadway, and failed to adjust her car accordingly.

> Going further, the question becomes whether or not, as part of this discussion, is whether or not defendant Bardo was more than 51% at fault and—or less than 51% at fault? Taking that—phrasing it the other way, with regard to plaintiff, plaintiff, I believe, was more than 51% at fault. And think about it—the Court views it like this. If defendant Bardo had parked her car there and walked inside the house, obviously, plaintiff could not hit the car. Plaintiff would have a duty to see the car and go around the car.

> So and there is every indication that the weather was not a factor. If the car was parked, then there would be no turn signal, there would be no break [sic] light issue. You still could not go hit that car. So for those reasons, I am granting the [motion for summary disposition].

The court entered separate orders granting summary disposition in favor of Bardo and Home-Owners.[1] This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Girimonte v Liberty Mut Ins Co*, 348 Mich App 768, 773; 19 NW3d 921 (2023). The trial court granted summary disposition to Bardo and Home-Owners under MCR 2.116(C)(10). That subrule tests the factual sufficiency of a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a (C)(10) motion, courts must consider the evidence in the light most favorable to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

---

[1] The order at issue on appeal with respect to Home-Owners was a partial grant of summary disposition because plaintiff brought other claims against Home-Owners. The order resolving those other claims is not at issue in this appeal.

The moving party bears the initial burden of proving either that evidence affirmatively negates an essential element of the nonmoving party's claim, or that there is insufficient evidence in the record to establish an essential element of the nonmoving party's claim. *Id*. If the moving party meets this burden, then the burden "shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds could differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). If there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, then the motion is properly granted. MCR 2.116(C)(10); *Quinto*, 451 Mich at 363.

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition to Bardo and Home-Owners under MCR 2.116(C)(10). We disagree.

For purposes of this appeal, we will assume that Bardo was negligent because, when viewing the evidence in the light most favorable to plaintiff, Bardo was driving a vehicle that did not have working brake lights or a working turn single. We will further assume that Bardo's negligence was a proximate cause of the collision.[2]

Pursuant to statute, if one vehicle rear-ends another vehicle, the driver of the offending "vehicle shall be deemed prima facie guilty of negligence." MCL 257.402(a). This presumption of negligence "may be rebutted by showing the existence of a sudden emergency." *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139; 753 NW2d 591 (2008).[3] For a sudden emergency to exist, "the circumstances attending the accident must present a situation that is 'unusual or unsuspected.'" *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971) (quotation marks and citation omitted). A situation is "unusual" in this context if it varies from a motorist's "everyday traffic routine." *Id*. "Such an event is typically associated with a phenomenon of nature." *Id*. An "unsuspected" situation under the sudden-emergency doctrine refers to "a potential peril within the everyday movement of traffic." *Id*. "To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected." *Id*.

It is undisputed that plaintiff was driving her vehicle when it rear-ended Bardo's vehicle, so plaintiff is "deemed prima facie guilty of negligence." MCL 257.402(a). Plaintiff contends that she presented evidence to rebut this presumption of negligence because plaintiff confronting

---

[2] Home-Owners argues in its brief on appeal that even if Bardo was negligent by operating a motor vehicle without working brake lights and a working turn signal, she could still not be found liable to plaintiff because Bardo's presumed negligence did not proximately cause plaintiff to rear-end Bardo. This issue was not raised in (let alone addressed by) the trial court.

[3] The sudden-emergency doctrine is not an affirmative defense but an extension of the reasonably-prudent-person rule. *Szymborski v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971). It does not negate a person's negligence but places the person's allegedly negligent conduct in context, asking whether the person acted reasonably when confronted by a sudden emergency. *Id*.

Bardo's nonmoving (or slow-moving) vehicle—which did not have working brake lights or a working turn signal—in the lane of travel constituted a sudden emergency.

A reasonable juror could not conclude this constituted sudden emergency, even when viewing the evidence in the light most favorable to plaintiff. There was nothing "unusual" about the situation plaintiff faced. Especially in residential areas, confronting nonmoving or slow-moving vehicles—even ones that do not have their brake lights or turn signals lit up—is not unexpected. Navigating around such vehicles is a typical part of any motorist's "everyday traffic routine," and it is certainly not the type of natural phenomenon "typically associated" with "unusual" situations that the sudden-emergency doctrine is intended to address. *Id*.

We also reject plaintiff's argument that confronting Bardo's vehicle may have been an "unsuspected" situation under the sudden-emergency doctrine. Again, "[t]o come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected." *Id*. On this point, *Vander Laan* is instructive. There, the defendant was driving a truck behind the plaintiff's vehicle. *Id*. at 229. The plaintiff started to brake when the vehicle in front of her did the same, and "[a]t about the same time," the defendant went over a bump and looked in his rearview mirror for "just a second or so" to make sure his load was still secure. *Id*. When the defendant looked back, the plaintiff's "car was stopped (or virtually so) in front of" the defendant, and the defendant's vehicle rear-ended the plaintiff's. *Id*. The *Vander Laan* Court held that, on these facts, there was no "emergency confronting" the defendant because, even if the defendant was not always looking forward, he always had a clear view of what was in front of him:

> Just prior to the accident [the defendant] had been travelling only "two or three car lengths, maybe four" behind the plaintiff, "probably" at a speed of 20-25 m.p.h. [The defendant] had just turned onto Aberdeen Street, and as indicated by his own testimony, the entire pre-accident setting was in his clear view. This included the hill, the [truck in front of plaintiff], which he knew was loaded, and the [plaintiff's] vehicle.
>
> This whole scene continued to be in actual view at all times except for a "second or so" when [the defendant] glanced in his rearview mirror after hitting a bump in the road. While the process of looking in the rear-view mirror may have interrupted defendant's actual view of the scene, he is still held to have had clear view. [*Id*. at 233.]

Like the defendant in *Vander Laan*, plaintiff here always had a clear view of what was in front of her. The conditions were clear, and nothing was obstructing plaintiff's view. Yet, for whatever reason, plaintiff did not see Bardo's vehicle until they "were close." This was despite the fact that the collision occurred 412 feet from where plaintiff turned onto Crosby, and Bardo's

vehicle was in front of plaintiff the entire time she was on Crosby.[4] While it is unclear why plaintiff did not see Bardo's vehicle until they "were close," she "is still held to have had clear view" of the potential peril the entire time she was on Crosby. *Id*. See also *Moore v Spangler*, 401 Mich 360, 383; 258 NW2d 34 (1977) (relying on *Vander Laan* to conclude that a vehicle suddenly stopping in front of the defendant did not constitute a sudden emergency because the defendant had an uninterrupted view of what was in front of him). And given how far away from the intersection of Crosby and Genesee that the collision occurred and the relatively slow speed that plaintiff claimed to be traveling, plaintiff's clear view of the potential peril lasted for a not-insignificant length of time. Accordingly, on this record, confronting Bardo's vehicle was not an "unsuspected" situation "within the narrow confines of the emergency doctrine." *Vander Laan*, 385 Mich at 232. And because the record does not support that plaintiff was confronted with an "unusual" or "unsuspected" situation before rear-ending Bardo, she cannot avail herself of the sudden-emergency doctrine to rebut her presumed negligence.

This conclusion means that plaintiff's prima facie negligence is unrebutted. But, as stated above, we are assuming for purposes of this opinion that Bardo was also negligent because, viewing the evidence in the light most favorable to plaintiff, Bardo was operating a vehicle without working brake lights or a working turn signal. The trial court concluded that plaintiff was precluded from recovering damages against Bardo under MCL 500.3135(2)(b) because no reasonable juror could find that Bardo was 50% or more at fault for the accident. MCL 500.3135(2)(b) provides that, for a cause of action in tort, "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." Under this rule, even if a defendant was negligent, if "no reasonable juror could find that [the] defendant was more at fault than the [other party involved] in the accident," then summary disposition should be granted in favor of the defendant as a matter of law. *Huggins v Scripter*, 469 Mich 898, 898; 669 NW2d 813 (2003). See also *Rowland v City of Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372120); slip op at 8 (holding that the "plaintiff's own conduct so plainly exceeded any arguable negligence by defendants that the case cannot proceed to a jury under MCL 500.3135(2)(b)").

To address this argument, we begin by revisiting the parties' testimony about the circumstances of the collision. The collision occurred on Crosby Road, 412 feet away from where Crosby intersects with Genesee Road. Plaintiff turned onto Crosby from Genesee just before the collision. The conditions at the time were clear, and there was nothing obstructing plaintiff's view. Bardo also turned onto Crosby from Genesee, and she must have done so before plaintiff because plaintiff rear-ended Bardo, and no evidence suggests that Bardo overtook plaintiff on Crosby. Yet, despite Bardo being in front of plaintiff the entire time plaintiff was traveling on Crosby, plaintiff said that she did not see Bardo's vehicle until they "were close." More notably, plaintiff never said that she saw Bardo's vehicle moving while traveling behind it and could not perceive that Bardo was slowing down or stopping before the collision. Instead, plaintiff repeatedly testified that, when she saw Bardo's vehicle, it was stopped. Asked to describe the accident, plaintiff

---

[4] Both Bardo and plaintiff testified that they turned left onto Crosby from Genesee, and Bardo must have done so before plaintiff because plaintiff rear-ended Bardo, and nothing suggests (and no one contends) that Bardo overtook plaintiff on Crosby.

testified, "So I turned on Crosby, started to accelerate, noticed that [Bardo] was at a stop and tried to swerve to avoid her." Plaintiff was then asked if she braked "when [she] saw" Bardo's vehicle, and she replied in the affirmative. And when asked why she was "not able to slow [her] vehicle to a stop" to avoid hitting Bardo, plaintiff said that she "didn't know [Bardo] was stopped," and "as soon as [she] noticed [Bardo] stopped, [she] swerved and hit the brake[s]." Only plaintiff knows what she perceived before the collision, see *Price v Austin*, 509 Mich 938, 938 (2022) (explaining that "only [the driver] could know what happened inside his truck that day"), and plaintiff never testified that she was trailing Bardo's moving vehicle and did not perceive that Bardo was slowing down or stopping before the collision. Plaintiff only testified that she saw Bardo's car when it was "stopped," but did not see the car until they "were close," and despite immediately applying the brakes, she did not have time to avoid the collision. No one observed any skid marks on the road following the collision, and Bardo's vehicle was so damaged by the collision that neither its brake lights nor turn signals could be tested to see if they were working.

On this record, no reasonable juror could conclude that Bardo was more at fault for the collision than plaintiff. Bardo was purportedly negligent by operating a vehicle without working brake lights and a working turn signal. Plaintiff, on the other hand, was negligent because, despite it being a clear and sunny day with nothing obstructing her view, she did not see Bardo's "stopped" car in front of her until they "were close," at which point it was too late to avoid a collision, so plaintiff rear-ended Bardo. Based on plaintiff's testimony about what she perceived before the accident, it is clear that even if Bardo was merely driving very slowly in the lane of travel—or, as the trial court noted, if Bardo's vehicle was parked in the road—plaintiff would have still rear-ended Bardo's vehicle. On such a record, a reasonable juror could only conclude that plaintiff was more at-fault for the collision than Bardo, so MCL 500.3135(2)(b) precludes plaintiff from recovering damages, and her negligence claim against Bardo fails as a matter of law.[5] See *Huggins*, 469 Mich at 898.

---

[5] Even if plaintiff did observe Bardo's vehicle moving while plaintiff was traveling behind it, we would still conclude that no reasonable juror could conclude that Bardo was more at fault for the collision than plaintiff. The collision occurred 412 feet from where plaintiff turned onto Crosby. Crosby is a straight, two-lane road, the conditions at the time were clear, and nothing obstructed plaintiff's view. This means that Bardo's vehicle would have been visible to plaintiff the entire time she was on Crosby. Plaintiff clearly would have been able to perceive that she was gaining on Bardo's vehicle as she drove along Crosby, yet she failed to adjust her speed or apply her brakes in time to avoid colliding with Bardo's vehicle. This was despite the fact that there is no evidence that Bardo's speed changed abruptly, such as if she slammed on her brakes. Indeed, the only evidence in the record about how Bardo was driving before the collision is Bardo's testimony that she did not "have to speed up or slow down very much to start turning" into her driveway because it was so close to the intersection from where Bardo had just turned. Additionally, no skid marks were observed at the scene, and the collision so damaged Bardo's vehicle that its brake lights and turn signal could not be tested afterwards. On this record, even viewing this evidence in the light most favorable to plaintiff and accounting for the fact that the lack of brake lights or a turn signal on Bardo's vehicle would have made it more difficult for plaintiff to perceive that Bardo may have

The trial court therefore properly granted summary disposition (1) in favor of Bardo on plaintiff's claim of negligence against her, and (2) in favor of Home-Owners on plaintiff's claim against Home-Owners that hinged on plaintiff's negligence claim against Bardo.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien

---

been slowing down to turn into her driveway, no reasonable juror could conclude that Bardo was more at fault for the collision than plaintiff.